UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SUMIT S.,

            Petitioner,

     v.

TIMOTHY S. ROBBINS, et al.,

            Respondents.

No. 1:26-cv-00975-TLN-CKD

A # 246-243-122

**ORDER**

This matter is before the Court on Petitioner Sumit S.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed a response. (ECF No. 8.) For the reasons set forth below, Petitioner's habeas petition is GRANTED.

///

///

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner filed the instant Petition for Writ of Habeas Corpus to challenge the lawfulness of his civil detention. (ECF No. 1.) Petitioner entered the United States on December 19, 2022, and he was encountered by U.S. Customs and Border Patrol. (*Id.* at 2, 8.) On May 1, 2023, the U.S. Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear. (*Id.* at 2.) Petitioner was then paroled due to detention capacity or time in custody constraints at the Tucson Coordination Center in Tucson, Arizona. (*Id.*) After he was released, Petitioner filed an I-589, Application for Asylum and his asylum case is pending before the Concord Immigration Court. (*Id.*) After Petitioner was released, he attended all his check-ins with U.S. Immigration and Customs Enforcement ("ICE") without any failure, strictly complied with ICE requirements, and never violated any conditions imposed on him. (*Id.*) Petitioner was called by ICE for a check-in based on an allegation that he failed to complete his check-in through the phone application from his residence. (*Id.* at 9.) Petitioner maintains this allegation was improper and despite that, he was unlawfully detained by ICE on June 5, 2025. (*Id.*)

Petitioner filed a motion for custody redetermination on July 23, 2025, which was withdrawn without prejudice. (ECF No. 6 at 3.) Petitioner notes that due to prolonged detention, he again filed a motion for custody redetermination on November 24, 2025, which was denied by the immigration judge based on "flight risk and danger to the community," with no further explanation provided. (*Id.*; ECF No. 1-1 at 27.) Petitioner maintains this basis is erroneous has he strictly complied with ICE requirements and never violated any conditions imposed on him. (ECF No. 1 at 9.)

On February 4 and 5, 2026, Petitioner filed the instant habeas petition and motion for temporary restraining order ("TRO"), respectively. (*See id.*; ECF No. 6.) On February 5, 2026, the Court granted Petitioner's motion for TRO, ordering his immediate release under the same conditions he was released prior to his current detention. (ECF No. 7.) The Court also ordered Respondents to show cause why the Court should not grant the habeas petition. (*Id.*) On

---

[2]   These facts are primarily taken from Petitioner's habeas petition and attachments. (ECF No. 1.) Respondents do not dispute these facts. (*See generally* ECF No. 8.)

February 11, 2026, Respondents filed a response and motion to dismiss.  (ECF No. 8.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention violates his rights guaranteed by the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 10–11.)  In opposition, Respondents contend Petitioner is an "applicant for admission" subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 8 at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including detention

---

[3]    Petitioner also claims his detention is prolonged in violation of the Fifth Amendment and violates the Immigration and Nationality Act.  (ECF No. 1 at 10–23.)  The Court need not address Petitioner's additional claims as they seek the same relief he seeks in his Fifth Amendment procedural due process claim.

and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a protected liberty interest in his continued freedom.  The Government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  *Morrissey*, 408 U.S. at 482.  Respondents do not contend that Petitioner failed to comply with the conditions of his release.  Petitioner thus has a clear liberty interest in his continued freedom protected by the Fifth Amendment.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened his liberty interest).

The Court is not persuaded by Respondent's argument that Petitioner is subject to mandatory detention under § 1225(b)(2) as an "applicant for admission."  Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' position.  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking

admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondents set forth no new arguments or facts justifying a different conclusion in this case. Accordingly, Petitioner has a clear interest in his continued liberty protected by the Due Process Clause.

B.    <u>Process Required</u>

Having found Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). The *Mathews* factors support requiring Petitioner receive notice and a hearing before a neutral decisionmaker prior to re-detention.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

5

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025). As Petitioner received virtually no procedural safeguards such as a bond or custody redetermination hearing, the risk that he is being detained without justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Government's interest in detaining Petitioner without notice and a hearing is negligible. Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the Government's interest is further diminished where, as here, Petitioner was already found appropriate for release and has complied with the conditions of his release. *R.D.T.M.*, 2025 WL 2686866 at *6. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention. He received neither.

Accordingly, the Court finds Respondents violated Petitioner's due process rights.

**IV.    CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED:

1.    Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED;

2.    Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present; and

3.      The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date:  May 15, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE